**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-60878

JESSE ODEN,

Plaintiff-Appellee,

VERSUS

OKTIBBEHA COUNTY, MISSISSIPPI; DOLPH BRYAN,
Individually and in his official capacity as sheriff,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Mississippi, Aberdeen

March 27, 2001

Before POLITZ, SMITH and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Defendants Oktibbeha County, Sheriff Dolph Bryan in his
official capacity, and Dolph Bryan individually appeal from the
judgment of the district court in which a jury awarded plaintiff
Jesse Oden compensatory and punitive damages for Sheriff Bryan's
failure to promote Oden to chief deputy. We reverse the punitive
and compensatory damages against Oktibbeha County and Dolph Bryan
individually and affirm the jury's compensatory damage award
against Sheriff Bryan in his official capacity.

1

I.

In September of 1976, Jesse Oden and George Carrithers joined the Oktibbeha County Sheriff's Department. Oden worked as a part time radio operator, while Carrithers served as a part time jailer. The Department promoted Oden to full time road deputy in 1979. Carrithers received the same rank in 1980.

Sheriff Dolph Bryan dismissed his former chief deputy in 1986. Deputy Oden inquired about the job, but Sheriff Bryan informed him that he would not fill the vacant position. At the same time, Sheriff Bryan assigned Deputy Carrithers to office duties and gave him the title "administrative assistant." Deputy Oden remained working in the field. In 1997, Sheriff Bryan promoted Deputy Carrithers to chief deputy.

Deputy Oden filed a complaint with the Equal Employment Opportunity Commission, claiming age and race discrimination. Oden then sued Oktibbeha County, Sheriff Dolph Bryan in his official capacity, and Sheriff Dolph Bryan individually, asserting causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and 42 U.S.C. § 1985.[1]

Oden presented evidence at trial showing his seniority, superior law enforcement training, and background in business

---

[1] Neither the parties nor the district court contemplated the application of 42 U.S.C. § 1985 to this case. Because Oden failed to present evidence of a conspiracy to discriminate, this Court's analysis is limited to the plaintiff's causes of action under Title VII and 42 U.S.C. § 1981.

management. According to Oden, these assets should have ensured his promotion to chief deputy. The defendants argued that the chief deputy position was not a promotion in favor of Deputy Carrithers; rather, the assignment of the chief deputy rank was merely a change in job title. The defendants also claimed that Deputy Oden was unqualified. At the close of the plaintiff's case, the district judge entered a directed verdict for the defendants dismissing Oden's age discrimination claim. The jury returned a verdict in favor of Deputy Oden for race discrimination and assessed compensatory and punitive damages against all three defendants.

I. Proper Defendants Under Title VII and 42 U.S.C. § 1981

Oktibbeha County and Sheriff Bryan ("Appellants") argue that the district court erred by denying their motion to dismiss the County and the Sheriff in his individual capacity. This Court recognizes that Title VII does not provide the exclusive remedy for discrimination by employers. *See Hernandez v. Hill Country Tel. Coop., Inc.*, 849 F.2d 139, 142-43 (5th Cir. 1988). Courts may not, however, indiscriminately assess damage awards against persons and entities that are not responsible for an employer's unlawful discriminatory conduct. *See Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998) (holding that only employers are liable for unlawful conduct under Title VII). Because the remedies against the defendants under Title VII and § 1981 were not separated, we

3

must determine whether the district court erred by assessing compensatory and punitive damages against Oktibbeha County and the Sheriff in his official and individual capacities.

### A. Defendants and Remedies under § 1981

Plaintiffs may plead causes of action under both Title VII and § 1981 against private employers to remedy discrimination in private employment contracts. *See Runyon v. McCrary*, 427 U.S. 160, 174 (1976); *Johnson v. Railway Express Agency, Inc.*, 412 U.S. 454, 459 (1975). Plaintiffs may also pursue a § 1983 cause of action against persons acting under color of state law in order to assert their substantive rights under § 1981. We must determine whether Oden can assert an independent cause of action under § 1981 against Oktibbeha County and the Sheriff in his official and individual capacities.

### 1. The County and the Sheriff in His Official Capacity

In 1989, the Supreme Court held in *Jett v. Dallas Independent School District*, 491 U.S. 701, 731 (1989), that § 1981 did not provide a separate cause of action against local government entities. The Court concluded that plaintiffs must assert a cause of action against state actors under § 1983 to remedy violations of civil rights under § 1981. *See id.* Several courts have addressed the continuing significance of the Court's plurality decision after Congress passed the Civil Rights Act of 1991. The Act amended § 1981 by adding subsection (c), which states that the rights

4

protected by § 1981 "are protected against impairment by nongovernmental discrimination and impairment under color of state law." 42 U.S.C. § 1981(c).[2] In order to determine whether Oden could pursue a separate cause of action under § 1981 against Oktibbeha County and the Sheriff in his official capacity, we must address whether the 1991 amendment abrogated the Court's holding in *Jett* and created a separate cause of action against local government entities.

Subsection (c) does not expressly create a remedial cause of action against local government entities, and we are not persuaded that such a remedy should be implied. In *Jett*, the Court held that Congress intended § 1983 to be the sole remedy for discrimination by persons acting under color of state law. *See Jett*, 491 U.S. at 731. The Court reasoned that §1981 implicitly created an independent cause of action against private actors because no other statute created such a remedy. *See id*. at 732. Because § 1983 provided a remedy against persons acting under color of state law, the Court declined to imply a cause of action under § 1981

---

[2]The circuit courts are split as to the effect of the Civil Rights Act of 1991 upon the Court's holding in *Jett*. The Fourth Circuit and Eleventh Circuit concluded that the 1991 amendment had no affect on the Court's opinion. *See Butts v. County of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000); *Dennis v. County of Fairfax*, 55 F.3d 151, 156 n.1 (4th Cir. 1995). The Ninth Circuit, however, concluded that the 1991 amendment implicitly created a cause of action against local government entities. *See Federation of African American Contractors v. Oakland*, 96 F.3d 1204 (9th Cir. 1996).

5

independent of § 1983.  We are persuaded that the conclusion in *Jett* remains the same after Congress enacted the 1991 amendments. Subsection (c) addresses only substantive rights.  Section 1983 remains the only provision to expressly create a remedy against persons acting under color of state law.  The addition of subsection (c) creates no more of a need for the judiciary to imply a cause of action under § 1981 against state actors than existed when the Supreme Court decided *Jett.*

The legislative history of the 1991 amendment is supportive of our conclusion.  By enacting subsection (c), Congress stated that it intended to codify the Supreme Court's decision in *Runyon v. McCrary*.  *See Butts*, 222 F.3d at 894 (citing H.R. Rep. No. 102-40(I), at 92 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 630; H.R. Rep. No. 102-40(II), at 37 (1991), reprinted in 1991 U.S.C.C.A.N. 694, 731).  *See also Anderson v. Conboy*, 156 F.3d 167, 179 (2d Cir. 1998).  In *Runyon*, the Supreme Court reaffirmed that § 1981 implies a right of action based on racial discrimination against private actors.  *See Runyon*,  427 U.S. at 174-75.  There is no congressional statement of intent to overrule *Jett*.  By codifying *Runyon*, Congress confirmed that § 1981 implies a cause of action against private actors.

The question follows then why, if Congress only intended to codify *Runyon*, does subsection (c) include language referring to persons acting under color of state law?  The Ninth Circuit

6

reasoned that this allusion to persons acting under color of state law implies Congressional intent to create a remedy in addition to § 1983. *See Oakland*, 96 F.3d at 1213. We disagree. "[T]he judicial power to imply or create remedies . . . should not be exercised in the face of an express decision by Congress concerning the scope of remedies available under a particular statute." *Jett*, 491 U.S. at 732 (citing *National R.R. Passenger Corp. v. National Assn. of R.R. Passengers*, 414 U.S. 453, 458 (1974). Because Congress neither expressed its intent to overrule *Jett*, nor explicitly created a remedy against state actors in addition to § 1983, we are not willing to deviate from the Supreme Court's analysis of § 1981 in *Jett*. Accordingly, Deputy Oden could not maintain an independent cause of action under § 1981 against Oktibbeha County and Sheriff Dolph Bryan in his official capacity.[3]

### 2. The Sheriff in His Individual Capacity

Sheriff Dolph Bryan claims that the district court erred by failing to dismiss Oden's claims against him in his individual capacity. The Sheriff does not dispute that § 1981 provides an implicit cause of action against private actors in private

---

[3]In any event, there is no evidence in the record that the promotion to chief deputy was in accordance with any custom or policy of the County. Rather, Sheriff Bryan's employment decision represented the policy of the Sheriff's Department, a separate government entity. Therefore, the judgment against the County cannot be imposed on the basis of *respondeat superior*. *See Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 415 (1997); *Jett*, 491 U.S. at 737.

7

employment discrimination cases. *See Johnson v. Railway Express Agency, Inc.*, 412 U.S. 454, 459 (1975); *Adams v. McDougal*, 695 F.2d 104, 108 (5th Cir. 1983). Rather, he argues that he is not a proper party in this suit because he was acting in his official capacity.[4]

While the Supreme Court has extended § 1981 liability to cases involving private employment contracts, it has not imposed personal liability on elected officials for discrimination in the terms and conditions of local government employment contracts. *Cf. Brown v. General Servs. Admin.*, 425 U.S. 820, 835 (1976) (holding that Title VII is the exclusive remedy for seeking money damages against the federal government). In *Huckabay v. Moore*, this Court concluded that an individual was not an employer for purposes of Title VII when acting in his official capacity. *See* 142 F.3d at 241. Only officials should be responsible for discriminatory decisions concerning government employment contracts. *See id. See also Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994) ("Only 'employers,' not individuals acting in their individual capacity who do not otherwise meet the definition of 'employers,' can be liable under Title VII."); *Harvey v. Blake*, 913 F.2d 226, 227 (5th Cir. 1990) (concluding that an elected official should not

---

[4]"Racial discrimination claims brought under § 1981 are subject to the defense of qualified immunity." *Todd v. Hawk*, 72 F.3d 443, 445 n.6 (5th Cir. 1995). However, Sheriff Bryan did not raise qualified immunity in the district court.

be liable for official acts). Likewise, when a plaintiff asserts a cause of action under § 1981 for discrimination in the terms and conditions of a municipal employment contract, the proper defendant is the government employer in his official capacity. Because Sheriff Bryan's choice to promote Deputy Carrithers to chief deputy was an official decision, he is not personally liable under § 1981.[5] We therefore dismiss the district court's judgment against Sheriff Bryan in his individual capacity.

## B. Title VII Defendants

Title VII allows employees to sue their employers for discriminatory employment decisions. *See* 42 U.S.C. §§ 2000e-2(a), 2000e-5. An "employer" under Title VII is a "person in an industry affecting commerce who has fifteen or more employees . . .." 42 U.S.C. § 2000e(b). A person "includes one or more individuals, governments, governmental agencies, [or] political subdivisions . . .." 42 U.S.C. § 2000e(a). The trial court failed to designate which of the three defendants was Deputy Oden's employer.[6]

---

[5]In other contexts, § 1981 serves as an independent cause of action against individuals for discriminatory acts performed in their official capacities. *See, e.g., Todd*, 72 F.3d at 446 (allowing a prisoner to sue prison officials under § 1981 for discriminatory conduct concerning the "punishment, pains, [and] penalties" provision in § 1981). Our decision regarding personal liability under § 1981 only applies to the liability of local government officials for their decisions affecting municipal employment contracts.

[6]Oktibbeha County and Sheriff Bryan in his official capacity are eligible employers under Title VII. Sheriff Bryan is not personally liable for the performance of wrongful acts in his

Federal law controls whether a person is an employer under Title VII, but courts can look to state law to understand the nature of the employment relationship. *See*, *e.g.*, *Calderon v. Martin County*, 639 F.2d 271, 273 (5th Cir. Unit B 1981) (determining whether plaintiff constituted an employee under Title VII). Mississippi law allows a sheriff to appoint, remove, and fix the compensation of his deputies, subject to the county board of supervisor's approval of the sheriff's budget. *See* Miss. Code Ann. § 19-25-19. Sheriff Bryan was solely responsible for hiring, promoting, and establishing the deputies' wages. The County's only responsibility was to approve the Sheriff's budget and allocate the necessary funds. Because Sheriff Bryan was the elected official who made all decisions concerning promotions within the Sheriff's Department, he was Deputy Oden's employer for purposes of Title VII.[7] We therefore reverse the district court's judgment against Oktibbeha County and Sheriff Dolph Bryan individually under Title

official capacity. *See Huckabay*, 142 F.3d at 241.

[7]*See Simmons v. Lyons*, 746 F.2d 265, 270 (5th Cir. 1984); *Ryals v. Mobile County Sheriff's Dept.*, 839 F. Supp. 25 (S.D. Ala. 1993). *See also Lee v. Coahoma County*, 937, F.2d 220, 226 (5th Cir. 1991), *amended in part*, 37 F.3d 1068 (1993) (holding that a Mississippi sheriff was an "employer" under the Fair Labor Standards Act). *Cf. Spencer v. Byrd*, 899 F. Supp. 1439, 1441 (M.D.N.C. 1995) (concluding that the county, rather than the sheriff, was an employer under Title VII because the county limited the number of the sheriff's deputies and provided the deputies' compensation); *Johnson v. Board of County Comm'rs for County of Freemont*, 859 F. Supp. 438, 442 (D. Col. 1994) (holding that the economic ties between the Board of Commissioners and the sheriff demonstrated that the Board was the Title VII employer).

10

VII.

### B. Punitive Damages Under Title VII

Appellants argue that the Civil Rights Act of 1991 limits Sheriff Bryan's liability in his official capacity to compensatory damages. The Act allows plaintiffs asserting a Title VII claim to recover compensatory and punitive damages, provided that recovery is unavailable under § 1981. *See* 42 U.S.C. § 1981a(1).[8] The Act precludes plaintiffs from recovering punitive damages against governments, government agencies, and political subdivisions. *See* 42 U.S.C. § 1981a(b); *Baker v. Runyon*, 114 F.3d 668, 669 (7th Cir. 1997), *cert. denied*, 119 S.Ct. 335 (1998).

Oden does not dispute the applicability of § 1981a to the Sheriff in his official capacity. Oden contends that the appellants forfeited their argument on appeal because the objections to the district court's jury instructions were not specific. *See* Fed. R. Civ. P. 51. We agree that the appellants

---

[8]Section 1981a states:

> In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-5) . . . against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C. 2000e-2 or 2000e-3) . . ., and provided that the complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964 . . ., from respondent.

42 U.S.C. § 1981a(a)(1).

11

failed to properly preserve their objection.

If a litigant forfeits a point of error on appeal, we review the district court's decision under the plain error standard. *See Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1427 (5th Cir. 1996) (en banc). For this Court to correct an error not raised at trial, "there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 467 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). If plain error exists, this Court should not exercise its discretion to correct the error unless "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id*.

The district court committed "plain error" by assessing punitive damages against the Sheriff. Section 1981a prohibits punitive damage awards against governments and political subdivisions. Subjecting the Sheriff to an $80,000 punitive damage award is inapposite to Congress's intent to preclude local government entities from paying such judgments. We find it appropriate even under a plain error standard to correct judgments that are contrary to the express limits federal law imposes on judicial authority, and therefore reverse the punitive damage award against Sheriff Bryan in his official capacity.

C. The Personal Staff Exception

Title VII relieves employers from liability for decisions

affecting members of a personal staff. *See* 42 U.S.C. § 2000e(f).[9]

The exception includes appointments to a staff position. *See*

*Teneyuca v. Bexar County*, 767 F.2d 148, 150-53 (5th Cir. 1985).

Appellants maintain that the district court erred in denying their

motion for judgment as a matter of law because the chief deputy

position is part of Sheriff Bryan's personal staff.  Oden claims

that the Appellants waived the personal staff exception by

asserting it for the first time in their motion for post-trial

relief.

Rule 8(c) of the Federal Rules of Civil Procedure lists

nineteen affirmative defenses that must be set forth in a

responsive pleading.  *See* Fed. R. Civ. P. 8(c).  In addition to

these nineteen defenses, Rule 8(c) includes "any other matter

constituting an avoidance or an affirmative defense."  *Id*.  To

---

[9]Title VII states:
> The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.  The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision.  With respect to employment in a foreign country, such term includes an individual who is a citizen of the United States.

42 U.S.C. § 2000e(f).

13

qualify as a defense under Rule 8(c)'s residuary clause, we look to the logical relationship between the defense and the cause of action and assess whether failure to timely plead the defense will result in unfair surprise. *See Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987). "A defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense." *See id.* at 1079. The personal staff exception allows the defendant to avoid liability even if the plaintiff meets his burden of proof under Title VII. *See id.* The defendant bears the initial burden of demonstrating that the personal staff exception applies. *See Nichols v. Hurley*, 921 F.2d 1101, 1111 (10th Cir. 1990); *Teneyuca v. Bexar County*, 767 F.2d 148, 152 (5th Cir. 1985).

The Appellants raised the personal staff exception for the first time in their motion for judgment as a matter of law, which was filed after the jury returned its verdict and the district court entered its judgment. Oden was denied the opportunity to present evidence at trial concerning the applicability of the personal staff exception. "'Affirmative defenses . . . will defeat an otherwise legitimate claim for relief [and] must be set forth to avoid surprise and give the opposing party an opportunity to respond.'" 2 JAMES W. MOORE ET AL, MOORE'S FEDERAL PRACTICE § 8.07[1], at 8-35 (3d ed. 2000) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971)). Allowing the Appellants to

wait until after the jury verdict to assert the personal staff exception was an unfair surprise to Oden. The personal staff exception is an affirmative defense that must be pleaded under Rule 8(c).[10] Appellants waived the personal staff exception by failing to raise it in a responsive pleading.

## II. Sufficiency of the Evidence

Appellants also argue that the trial court erred by denying their motion for judgment as a matter of law because the record contained insufficient evidence to support the jury's verdict. We review a district court's denial of a motion for judgment as a matter of law de novo. *See Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 (5th Cir. 2000). "Judgment as a matter of law is appropriate if 'there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Id*. (quoting Fed. R. Civ. P. 50(a)). After reviewing the evidence in the record, we draw all reasonable inferences in favor of the nonmoving party, disregarding evidence favorable to the moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct.

---

[10]This Court's holding is consistent with cases concluding that statutory exemptions should be pleaded as affirmative defenses. *See Donovan v. Hamm's Drive Inn*, 661 F.2d 316, 317 (5th Cir. Unit A 1981) (concluding that an exemption under the Fair Labor Standards Act is an affirmative defense that is waived if not pleaded); *Brennan v. Valley Towing Co.*, 515 F.2d 100, 104 (9th Cir. 1975) (holding that an exception under the Fair Labor Standards Act must be pleaded as an affirmative defense); WRIGHT & MILLER: FEDERAL PRACTICE & PROCEDURE § 1271 (1990); 2 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 8.07[5] (3d ed. 2000).

15

2097, 2110 (2000).

To prove a claim of intentional discrimination, a plaintiff must first establish a prima facie case. *See id*. at 2106; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Oden can demonstrate a prima facie case by showing that (1) the plaintiff was within a protected class; (2) he was qualified for the position sought; (3) he was not promoted; and (4) the position was filled by someone outside the protected class. *See Blow v. City of San Antonio, Texas*, 236 F.3d 293 (5th Cir. 2001) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53). The record shows that Oden, an African-American, was a member of a protected class, that he inquired about the chief deputy position, that he was not promoted to the higher rank, and that George Carrithers, a white male, was appointed to the position.

The Appellants contend that Oden cannot establish a prima facie case of race discrimination because the chief deputy appointment was not a promotion. Appellants claim that the analysis in § 1981 promotion cases should apply to support their argument under Title VII. In *Patterson v. McLean Credit Union*, 491 U.S. 164, 175-77 (1989), the Supreme Court held that plaintiffs must show that the failure to receive a promotion amounts to a denial of the opportunity to form a new and distinct employment relationship. *See also National Ass'n of Gov. Employees v. City Public Serv. Board of San Antonio, Texas*, 40 F.3d 698, 714 (1994).

16

In *Patterson*, the Court restricted claims under § 1981 to redress discriminatory conduct "at the initial formation of the contract" or "conduct which impairs the right to enforce contract obligations through legal process." *Patterson*, 491 U.S. at 179. *See also Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363, 1370 (5th Cir. 1992). The Court reasoned that § 1981 was restricted to the contractual relationship between an employer and employee, while Title VII addresses a more expansive scope of conduct. *See id*. at 180. The contract analysis for promotion claims under § 1981 therefore does not necessarily apply to Title VII suits.[11]

Title VII "is not limited to economic or tangible discrimination, . . . and it covers more than terms and conditions in the narrow contractual sense." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (citations ommitted). To establish a prima facie case for discrimination under Title VII, Oden must show that, at the very least, the alleged discriminatory conduct tended to adversely affect him. *See Mattern V. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997) (stating that the discrimination

---

[11]In any event, the *Patterson* decision was legislatively reversed by the Civil Rights Act of 1991. *See Harrington v. Harris*, 118 F.3d 359, 367 n.8 (5th Cir 1997). Section 1981 now states that, "[f]or purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Both § 1981 and Title VII now apply to the terms and conditions of the employment relationship, rendering the *Patterson* analysis inapplicable.

17

provision in Title VII is "much broader" than the retaliation provision and applies to activity that tends to adversely affect the employee). At most, Oden must demonstrate that Sheriff Bryan made an ultimate employment decision. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406-07 (5th Cir. 1999) (noting that the "ultimate employment decision" standard applied in retaliation cases may not apply to claims of race discrimination). Regardless of which standard applies, Sheriff Bryan's appointment was an ultimate employment decision. The Sheriff testified that only one person could fill the chief deputy position. By appointing Deputy Carrithers to the higher rank, Sheriff Bryan precluded Deputy Oden from becoming second in command. Sheriff Bryan's appointment was an employment decision that could subject him to Title VII liability.

Appellants further contend that Oden failed to establish a prima facie case because he was not qualified for the job. Sheriff Bryan testified that the chief deputy position required administration skills and an understanding of the office computer system. Deputy Carrithers was the only person in the Sheriff's Department who acquired these skills. Oden claims that, because the Sheriff never posted the qualifications for chief deputy before appointing Carrithers, the Sheriff's stated qualifications were pretext.

A plaintiff must demonstrate that he meets objective promotion

criteria at the prima facie stage of his case. *See Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674 (5th Cir. 2001); *Lindsey v. Prive Corp.*, 987 F.2d 324, 327 (5th Cir. 1993). Whether an employer's subjective hiring criteria serves as pretext for discrimination is an issue for the trier of fact to decide in the later stages of the burden-shifting analysis. *See id*. Oden was a road deputy with almost twenty years of experience at the time the Sheriff appointed Deputy Carrithers to the chief deputy position. Oden had seniority over every other officer in the Department. Other deputies testified that Oden was much better at working with the general public than Deputy Carrithers. In addition, Oden possessed managerial skills that he developed before working for the Sheriff's Department. On the basis of this evidence, Oden satisfied objective hiring criteria and established his prima facie case.

Once a plaintiff satisfies his prima facie case, the employer must assert a legitimate, nondiscriminatory reason for his decision. *See McDonnell Douglas*, 411 U.S. at 802. If an employer alleges a nondiscriminatory explanation, the factfinder must determine the "'ultimate question: whether [the] plaintiff has proven [intentional discrimination].'" *Russell*, 235 F.3d at 222 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511-12 (1993). "It is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional

19

discrmination." *Hicks*, 509 U.S. at 519. "Thus, plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 120 S.Ct. at 2109.

The Sheriff's asserted nondiscriminatory reason for promoting Deputy Carrithers over Deputy Oden was that Carrithers met the qualifications for the job. The Sheriff claimed that a chief deputy must be familiar with the administration of the Sheriff's Department and the Department's computer system. Oden argues that Sheriff Bryan's stated qualifications were pretext. Our task then is to determine whether sufficient evidence supports the jury's verdict in Oden's favor, viewing the evidence in the light most favorable to Oden, the nonmovant. *See Reeves*, 120 S.Ct. at 2110.

In addition to the evidence supporting his prima facie case, Oden established that he completed more law enforcement training than Deputy Carrithers and that he was proficient in some office skills, such as reviewing the other deputies' paperwork. Sheriff Bryan gave Deputy Carrithers the opportunity to improve his administrative skills without giving Oden the same chance. Deputy Oden could clearly meet most of the Sheriff's qualifications, but for the Sheriff's decision to groom someone else for the position.

To further refute the Sheriff's subjective qualifications, Oden presented evidence that Sheriff Bryan previously overlooked

20

qualified African-American applicants for deputy positions in favor of white applicants with less experience. Sheriff Bryan also stated that, if he could have filled two chief deputy positions, then he would have appointed both Oden and Carrithers. The Sheriff therefore admitted that computer skills and an acute knowledge of the office's administrative needs were not the primary qualifications for chief deputy. In fact, the transcript shows that the former chief deputy, like Deputy Oden, worked as a road deputy instead of an administrative assistant. After reviewing the record in the light most favorable to the verdict, we find that the record contains sufficient evidence to support the jury's finding of intentional discrimination.[12]

### III. Compensatory Damages

The jury awarded Oden $20,000 in compensatory damages for mental anguish and emotional stress that he suffered as a result of Sheriff Bryan's conduct. Section 1981a allows juries to award compensatory damages for mental anguish and suffering. *See* 42 U.S.C. § 1981a(a)(1).[13] Appellants claim that the award of

---

[12]The Appellants further claim that the jury was biased and prejudiced by irrelevant testimony. Appellants neither specified any instances in the record as to when the alleged irrelevant testimony occurred nor supported their argument with adequate legal authority. Because we do not consider issues that are inadequately briefed, we do not address this contention. *See Rutherford v. Harris County, Texas*, 197 F.3d 173, 193 (5th Cir, 1999).

[13]Section 1981a excludes backpay or any other relief under 42 U.S.C. § 2000e-5(g). Compensatory damages include awards for "future pecuniary losses, emotional pain, suffering, inconvenience,

compensatory damages was not supported by the evidence. We review the award of mental anguish damages for abuse of discretion. *See Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir. 1996).

In many cases, "a claimant's testimony alone may not be sufficient to support anything more than a nominal damage award." *Id.* at 938. Plaintiffs are required to prove damages for mental anguish and suffering to a "degree of specificity which may include corroborating testimony or medical or psychological evidence . . .." *Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 264 (1978)). We however have not required corroborating testimony and medical evidence in every case involving nonpecuniary compensatory damages. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1046 (1998); *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 809 (5th Cir. 1996). In *Migis*, the district court relied solely on the plaintiff's testimony. The plaintiff stated that her employer's discrimination caused her low self-esteem, serious financial hardships in relation to her newborn child, anxiety attacks, stress, and sleeplessness. *See Migis*, 135 F.3d at 1046. We concluded that the district court did not abuse its discretion by awarding compensatory damages because Migis' testimony was sufficiently detailed to support the award. *See id*. at 1047.

---

mental anguish, loss of enjoyment of life, and other nonpecuniary losses . . .." 42 U.S.C. 1981a(b)(3).

We have reviewed the evidence presented by Oden, which included his testimony concerning stress, sleeplessness, betrayal, and shame, and find that there is sufficient evidence to support the jury's award.

## IV.  Conclusion

In sum, we reverse the district court's judgment against Oktibbeha County.  Oden could not assert an independent cause of action against a local government entity under § 1981, and the County is not an employer for purposes of Title VII.  We also reverse the district court's judgment against the Sheriff in his individual capacity because the Sheriff is not personally liable for his official employment decisions under Title VII and § 1981. We reverse the district court's judgment as to the punitive damage award against the Sheriff in his official capacity because § 1981a prohibits punitive damages against government entities.  Finally, we affirm the district court's judgment assessing compensatory damages against the Sheriff in his official capacity.

REVERSED IN PART; AFFIRMED IN PART

POLITZ, Circuit Judge, specially concurring:

I specially concur, but conclude that the more appropriate disposition of the 42 U.S.C. § 1981(c) issue presented herein would be as that accorded by our colleagues in the Ninth Circuit in *Federation of African American Contractors v. Oakland*, 96 F.3d 1204 (9th Cir. 1996).