# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 29, 2011

No. 10-31209

Lyle W. Cayce
Clerk

MAYA BALAKRISHNAN, Medical Doctor,

Plaintiff-Appellant

v.

BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND
AGRICULTURAL AND MECHANICAL COLLEGE; LOUISIANA STATE
UNIVERSITY SCHOOL OF MEDICINE, NEW ORLEANS; WILLIAM
SCOTT GRIFFIES, Medical Doctor, named solely in his official capacity;
HOWARD OSOFSKY, Medical Doctor, named solely in his official capacity;
LARRY HOLLIER, Medical Doctor, named solely in his official capacity;
STEVE NELSON, Medical Doctor, named solely in his official capacity; ERIC
CONRAD, Medical Doctor, named solely in his official capacity; JOHN
LOMBARDI, Philosophiae Doctor, President of Louisiana State University
System, named solely in his official capacity; JAMES ROY, Chairman of the
Board of Supervisors of Louisiana State University and Agricultural and
Mechanical College,

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:08-CV-4315

Before JOLLY, HIGGINBOTHAM, and SOUTHWICK, Circuit Judges.

No. 10-31209

PER CURIAM:[*]

A medical school graduate participating in the third and fourth year of a residency at a medical center brought suit complaining of employment discrimination and retaliation. Summary judgment was granted to the medical center, from which the former resident appeals. We AFFIRM.

## FACTUAL AND PROCEDURAL HISTORY

The plaintiff, Maya Balakrishnan, graduated from medical college in India and started her psychiatric residency at Tufts University. After two years, she voluntarily left the program and continued her residency at Georgetown University. After ten months at Georgetown, she was involuntarily terminated. Balakrishnan started at LSU Medical Center in New Orleans in 2002 in order to complete the final two years of her residency. During her second year in the program – her fourth year of residency – LSU inquired whether Balakrishnan had passed the United States Medical Licensing Step Three Exam ("Step 3 Exam"). Balakrishnan represented that she had taken and passed the exam. She had actually failed the exam. At some point she also produced a falsified score report to the director of the residency program.

LSU's progression committee determined that it could not certify Balakrishnan's completion of the residency program, specifically the required professionalism competency, because she had lied to LSU about the Step 3 Exam. She also had failed to correct the misrepresentation when provided with remedial opportunities. The professionalism competency is one of six competencies the Accreditation Council for Graduate Medical Education requires schools determine candidates meet prior to certifying their completion of residency programs.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-31209

In 2005, Balakrishnan filed an EEOC complaint alleging discrimination on the basis of national origin and sex. She filed lawsuits in federal court and Louisiana state court seeking relief under 42 U.S.C. §§ 1981 and 1983. In state court she also sued for defamation. On Balakrishnan's motion, the federal lawsuit was dismissed without prejudice. The state court case is not part of this record, but the district court noted that in 2008 the state court sustained LSU's exception as to Balakrishnan's claims. In addition, the state court relied on a lack of subject matter jurisdiction to dismiss Balakrishnan's claims that were analogous to the claims in this suit.

In 2008, Balakrishnan filed another EEOC complaint alleging retaliation. After the EEOC issued a right-to-sue letter, Balakrishnan filed a complaint in the United States District Court for the Eastern District of Louisiana. The defendants were the Board of Supervisors of Louisiana State University and various other entities, and also certain individuals sued in their official capacities ("LSU," or the "defendants"). In her first amended complaint, Balakrishnan sought damages for retaliation and prospective injunctive relief to compel LSU to certify her completion of the residency program. LSU filed a motion for summary judgment, which the district court granted on October 5, 2010. Balakrishnan filed a Rule 59 motion seeking to amend her complaint to add a cause of action under 42 U.S.C. § 1983. The district court denied this motion on November 10. Balakrishnan timely appealed the grant of summary judgment and denial of her Rule 59 motion.

## DISCUSSION

### I. *Discrimination and Rule 59 Motion*

Balakrishnan alleges a number of facts that she contends raise a triable issue for a jury. As to racial bias, she recites allegations about hostility to foreigners. Balakrishnan points to the example of one of the defendants telling a Chinese resident that she should chose a different medical practice area

because of the language barrier when practicing in the communication heavy field of psychiatry. Balakrishnan also points to disciplinary incidents with other non-foreign residents. For example, one resident's driving under the influence did not cause LSU to fail to certify his completion of the program.

LSU argues that the Section 1981 claim fails because that statute is not applicable to claims against individuals acting under color of state law. Instead, those claims must be brought under Section 1983. Even if that argument fails, LSU suggests that her dishonesty about the Step 3 Exam is a nondiscriminatory basis to deny certification of her program completion.

The district court's grant of summary judgment on these claims "is reviewed de novo, applying the same standard as the district court." *Saenz v. Harlingen Med. Ctr., L.P.*, 613 F.3d 576, 579 (5th Cir. 2010).

Resolving whether Section 1981 is an available cause of action in this case requires consideration of a Supreme Court holding "that Congress intended that the explicit remedial provisions of § 1983 be controlling in the context of damages actions brought against state actors alleging violation of the rights declared in § 1981." *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989). After that decision, Congress amended Section 1981. *Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 462-63 (5th Cir. 2001). We held that there was no basis to conclude that the amendments overruled *Jett*. *Id.* at 463.

Even so, Balakrishnan refers us to a footnote in our *Oden* opinion that in some contexts, Section 1981 is "an independent cause of action against individuals for discriminatory acts performed in their official capacities." *Id.* at 464 n.5. For that point, we specifically identified the Section 1981 language that all persons "shall be subject to like punishment, pains, [and] penalties," a provision which necessarily involves state actors. 42 U.SC. § 1981(a).

Regardless of the proper reading of *Jett,* LSU presented a legitimate nondiscriminatory reason for withholding her certification. LSU points to her

misrepresentation about the Step 3 Exam and her failure to correct the lie when confronted with it during therapy. In light of this nondiscriminatory purpose, Balakrishnan must establish there remains a triable fact whether LSU's rationale was a pretext for a decision based on race. *Culwell v. City of Fort Worth*, 468 F.3d 868, 873 (5th Cir. 2006). Balakrishnan has not shown any evidence that LSU's nondiscriminatory reason was a pretext, any evidence upon which a jury could reject LSU's nondiscriminatory explanation, or any evidence upon which a jury could rely in finding a race-based animus such as different treatment for similarly situated employees. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-50 (2000); *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 882 (5th Cir. 2003).

In order to demonstrate that a co-worker was similarly situated, a plaintiff must establish that employment actions taken regarding that employee were taken in nearly identical circumstances. *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (footnotes omitted). Balakrishnan claims other residents with the same job and the same supervisors were treated differently. What she fails to demonstrate is that there was any other resident with a comparable violation. The only fellow resident she alleges received more favorable treatment for a similar violation is an anonymous white male who had a DUI. An isolated incident of criminal conduct is not comparable to material misrepresentations about passing a benchmark exam in the profession. *See Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001).

Balakrishnan also complains that the district court erred in refusing to grant her Rule 59(e) motion in which she sought to amend her complaint to add a Section 1983 claim. We generally review a district court's decision on a Rule 59(e) motion for an abuse of discretion. *Pioneer Natural Res. USA, Inc. v. Paper, Allied Indus. & Energy Workers Int'l Union Local 4-487*, 328 F.3d 818, 820 (5th Cir. 2003). The district court did not abuse its discretion in concluding that Balakrishnan was too late in seeking to amend her complaint to add a cause of action under Section 1983. A Rule 59 motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions . . . cannot be used to argue a case under a new legal theory." *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (quotation marks and citation omitted). The district court properly denied her attempt to add a cause of action after the entry of judgment in LSU's favor. *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

## II. *Retaliation*

Balakrishnan argues that LSU retaliated against her based on her original EEOC filing. Her personnel record was withheld and her credentials were not properly reported to a national verification system. After the first request the credentialing service sent to LSU, it reported that she had completed her first and second years of residency at LSU instead of her third and fourth. LSU also reported she was a resident, not the *chief* resident, an error that persisted even once LSU corrected other errors. She says this prejudiced her because she was chief resident and her representation of this to the credentialing service looked like a misrepresentation in light of LSU's failure to identify her that way.

LSU responds that its policy was to not disclose personnel records without a court order. Although Balakrishnan highlights one example of an individual who received his personnel file without a court order, that individual was not a resident but a certified doctor. LSU also argues that its withholding of the

personnel file was based on an active discovery dispute and engaging in litigation cannot constitute an adverse employment action. As to the credentialing paperwork, the defendant doctor filling out the form did not learn of Balakrishnan's EEOC complaint until after he filled out her paperwork.

A claim for retaliation operates under the traditional burden-shifting framework. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). A plaintiff alleging retaliation must establish a prima facie case that: "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *Id.* If a plaintiff makes a prima facie case, a defendant employer can shift the burden back to the plaintiff by articulating a nonretaliatory rationale for its action. *Id.* at 557. A plaintiff then must rebut each rationale the employer provides. *Id.*

Balakrishnan alleges that her EEOC filing was a protected activity, LSU's withholding of her personnel file and improper reporting were adverse, and these adverse actions occurred after she engaged in the protected activity. LSU shifted the burden back to Balakrishnan by providing nondiscriminatory rationales. First, it would not disclose personnel files to residents without a court order. Second, there could not be a causal link between the improper reporting and Balakrishnan's EEOC filing because undisputed evidence establishes that the supervising doctor responsible for reporting did not learn of the EEOC complaint until after he improperly filled out the paperwork.

For employers' actions to be retaliatory they "must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). Balakrishnan complains that without her file she could not prove her completion of the residency program. It is not that she needed the file, it is that she needed LSU to change what was in the file – namely certification

of her completion – in order to sit for the psychiatry board exam. In the light of this context, simply withholding the file was not objectively adverse to Balakrishnan. *See id.* at 68-69. The adversity she faced was LSU's refusal to certify her completion, which was a determination made before she filed her EEOC complaint. Thus, it could not be retaliatory. *Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999).

An employer cannot engage in a retaliatory action if at the time of the alleged action it does not know about an employee's protected conduct. *Id.* At the time Balakrishnan's supervisor initially filled out the national accreditation paperwork, he did not know about her EEOC complaint. At the time he corrected the paperwork, Balakrishnan's supervisor was aware of the EEOC complaint and that she was chief resident. Balakrishnan failed to produce any evidence of a causal link between LSU's reporting of the wrong title on a form and her EEOC filing. She argues this improper paperwork handling causes her application to the national accreditation body to appear as if it contains a misrepresentation and this may harm her application. At best, Balakrishnan's assertion evidences LSU's mishandling of paperwork. Balakrishnan cannot defeat summary judgment on the speculation that the discrepancy caused by LSU's mishandling of the paperwork may harm her. *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996).

AFFIRMED.