United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 18, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-41485

_____

ROY FOLEY, etc; ET AL,

                                        Plaintiffs,


ROY FOLEY, Doctor; and NORA HUTTO, Doctor,

                                        Plaintiffs-Appellees,


versus


UNIVERSITY OF HOUSTON SYSTEM; ET AL,

                                        Defendants,


CHERYL HINES, Individually and in her official capacity as Chair of
the Division of Education at University of Houston Victoria; DIANE
PRINCE, Individually and in her official capacity as Dean/Chair of
the Division of Education at University of Houston Victoria; PAUL
CARLSON, Individually and in his official capacity as Professor in
the Division of Education at University of Houston Victoria; KAREN
HAYNES, Individually and in her official capacity as President of
University of Houston Victoria; and DON SMITH, Individually and in
his official capacity as Provost of University of Houston Victoria,

                                        Defendants-Appellants.


_____

Appeal from the United States District Court
for the Southern District of Texas

_____


1

Before EMILIO M. GARZA and CLEMENT, Circuit Judges, and HUDSPETH[*], District Judge.

HUDSPETH, District Judge:

_____

This Court's opinion, 324 F.3d 310 (5th Cir. 2003), is hereby withdrawn, and the following opinion is substituted.

In this interlocutory appeal, the Appellants request reversal of a district court decision rejecting their claims to qualified immunity. In reaching a decision, we are required to determine the availability of a retaliation cause of action under 42 U.S.C. § 1981, the applicability of the defense of qualified immunity to such a claim, and whether the Appellees are entitled to that defense under the facts as determined by the district court. In the case of one Appellee, Dr. Nora Hutto, we are also required to determine whether her 42 U.S.C. § 1983 claim alleging violation of her First Amendment rights can survive a defense of qualified immunity.

I. FACTS

Appellees Dr. Roy Foley and Dr. Nora Hutto are tenured members of the faculty of the School of Education[1] at the University of Houston Victoria. Dr. Foley is black and Dr. Hutto is white. Dr. Foley began his career at the University of Houston Victoria

_____

[*]District Judge of the Western District of Texas, sitting by designation.

[1]The School of Education was formerly known as the Division of Education.

("UHV") in 1989 as an assistant professor in the Education Division.  In 1993, he was appointed Chair of the Division.  In 1994, after a vote of the faculty, he was removed as Chair and succeeded by Dr. Diane Prince, one of the Defendant-Appellants.  He timely filed a charge of discrimination with the Equal  Employment Opportunity Commission ("EEOC"), claiming racial discrimination in his removal as Chair.  The charge of discrimination was settled, one of the terms of the settlement being that Dr. Prince step down as Chair of the Division.  In 1995, Dr. Foley was awarded tenure and promoted to associate professor. In 1997, 1998, and 1999, he applied for promotion to full professor, but was not promoted.  In 1997 and 1999, he filed additional charges of discrimination[2] with the EEOC, contending that these failures to promote were motivated by race discrimination and were in retaliation for his previous EEOC charge of discrimination.  The response of UHV was that it had a policy not to promote an associate professor to the rank of full professor until he or she had served six years at the associate professor level.  Dr. Foley countered by claiming this was pretext, and that race and retaliation were the real reasons for his non-promotion.[3]

Dr. Nora Hutto was appointed Chair of the Education Division in February 1995, succeeding Dr. Prince. According to Dr. Hutto,

---

[2]Apparently no charge of discrimination was filed in 1998.

[3]Dr. Foley was promoted to full professor in 2001.

3

she became aware of the existence of a clique within the Education Division led by Dr. Prince. Dr. Hutto became convinced that Dr. Prince and her co-conspirators (allegedly including Dr. Hines and Dr. Carlson) were "out to get" Dr. Foley; they not only opposed his promotion, but also schemed to bring about his termination. Dr. Hutto supported Dr. Foley, believing that he was being treated unfairly. She blames Dr. Prince and her faction for causing her own removal as Chair of the Division in August 1996. In July 1999, she filed a charge of discrimination with the EEOC, alleging that she had been removed as Chair in retaliation for her support of Dr. Foley.[4]

On August 13, 1999, Drs. Foley and Hutto filed this suit. They named as Defendants the University of Houston System; University of Houston Victoria; the President of UHV (Dr. Karen Haynes); the Provost of UHV (Dr. Don Smith); and three individual professors in the Division of Education: the aforementioned Dr. Prince, Dr. Hines, and Dr. Carlson. The complaint alleged causes of action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); 42 U.S.C. § 1981 ("§ 1981"); 42 U.S.C. § 1983 ("§ 1983"), and for intentional infliction of emotional distress under Texas common law. All Defendants moved for summary judgment. The district court granted

---

[4]Dr. Hutto's EEOC charge also alleged sex discrimination. The district court granted summary judgment as to this claim, and it is not in issue in this appeal.

4

the Defendants' motions for summary judgment with respect to Dr.Hutto's Title VII and intentional infliction of emotional distress claims and Dr. Foley's Title VII and § 1981 claims of race discrimination, his § 1983 First Amendment claim, and his intentional infliction of emotional distress claim, as well as his remaining claims against Drs. Hines, Haynes, and Smith. However, the district court rejected the defense of qualified immunity with respect to the claims that remain. The surviving claims include Dr. Foley's claim of § 1981 retaliation against Dr. Prince and Dr. Carlson[5] and Dr. Hutto's claims of § 1981 retaliation and § 1983 deprivation of First Amendment rights against all five individual Defendants. Insisting that they are entitled to the defense of qualified immunity with respect to all those claims, the individual Defendants bring this interlocutory appeal.

## II. APPELLATE JURISDICTION

A district court order denying a motion for summary judgment based on qualified immunity, although interlocutory in nature, is immediately appealable if it is based on a conclusion of law. **Chiu v. Plano Indep. Sch. Dist.,** 260 F.3d 330, 340 (5th Cir. 2001); **Coleman v. Houston Indep. Sch. Dist.,** 113 F.3d 528, 531 (5th Cir. 1997). In the instant case, the district court found the existence of a genuine issue of material fact precluded summary judgment on

---

[5]The district court also denied summary judgment as to Dr. Foley's Title VII claim regarding hostile work environment. That ruling is not in issue in this interlocutory appeal.

5

the basis of qualified immunity with respect to those claims at issue in this appeal. The district court's determination that fact issues are genuine is not appealable. However, his determination that those fact issues are material, that is, that resolution of them might affect the outcome of the case under governing law, is appealable, and is before us today. **Chiu,** 260 F.3d at 341; **Wagner v. Bay City,** 227 F.3d 316, 320 (5th Cir. 2000); **Colston v. Barnhart ("Colston II"),** 146 F.3d 282, 284 (5th Cir. 1998).

III.  STANDARD OF REVIEW

This Court reviews *de novo* the district court's denial of a motion for summary judgment based on a claim of qualified immunity. **Chiu,** 260 F.3d at 342; **Mendenhall v. Riser,** 213 F.3d 226, 230 (5th Cir. 2000).

IV. DISCUSSION

A. QUALIFIED IMMUNITY

In addressing the claim of a public official to qualified immunity, we engage in a two-step analysis. First, we must determine whether the plaintiff has made a sufficient showing that the official violated a clearly established constitutional or statutory right. If the answer is in the affirmative, we then ask whether the official's actions were objectively reasonable in light of the clearly established right. **Siegert v. Gilley,** 500 U.S. 226 (1991).

The Appellants contend that their motion for summary judgment

based on qualified immunity should have been granted by the district court.  Qualified immunity attaches only to officials in their individual, not their official, capacities. **Harvey v. Blake,** 913 F.2d 226, 228 (5th Cir. 1990).  Of course, the issue of qualified immunity arises only if the individual official is subject to liability in the first place, and § 1981 liability does not necessarily run to all individual defendants.  We recently noted in **Felton v. Polles,** 315 F.3d 470 (5th Cir. 2002), that it has not yet been decided "whether a § 1981 claim lies against an individual defendant not a party to the contract giving rise to a claim." **Id.** at 480.  We have, however, accepted that § 1981 liability will lie against an individual defendant if that individual is "'essentially the same' as the State for the purposes of the complained-of conduct." **Id.** at 481 (quoting **Bellows v. Amoco Oil Co.,** 118 F.3d 268, 274 (5th Cir. 1997)).  In the instant case, the district court found genuine issues of material fact as to whether the Appellants exercised control over the faculty positions and titles held by Dr. Foley and Dr. Hutto.  If so, the Appellants were "essentially the same" as UHV for purposes of the retaliatory conduct alleged in this case. **See Al-Khazraji v. St. Francis College,** 784 F.2d 505, 518 (3d Cir. 1986)(holding that plaintiff could bring a § 1981 claim against individual members of a tenure committee if those individuals were personally involved in the discrimination action); **see also, Bellows,** 118 F.3d at 274 (citing **Al-Khazraji** with approval and

7

interpreting **Faraca v. Clements,** 506 F.2d 956 (5th Cir. 1975)).

We recognize that there is a tension between our decisions in *Bellows* (which cites **Faraca**) and **Oden v. Oktibbeha County, Miss.,** 246 F.3d 458 (5th Cir. 2001) (which does not cite **Faraca**) with respect to the liability of individual defendants who are not parties to the employment contract. However, we do not believe that this is the proper case in which to decide the outer boundaries of § 1981 liability as it applies to individual non-employer defendants,[6] nor to attempt to catalogue every fact situation which might subject an individual to such liability.[7] Instead, we proceed to determine whether Appellants Prince and Carlson are entitled to qualified immunity.

Claims against individual public officials under § 1981 are subject to the defense of qualified immunity, **Todd v. Hawk,** 72 F.3d

[6]The panel in *Oden* specifically limited that holding to the liability of local government officials for decisions affecting municipal employment contracts. 246 F.3d at 464 n.5.

[7]Cases from other circuits have suggested situations in which § 1981 liability may lie against individual defendants. **See e.g., Whidbee v. Garzarelli Food Specialties, Inc.,** 223 F.3d 62, 75 (2nd Cir. 2000); **Cardenas v. Massey,** 269 F.3d 251, 268-9 (3d Cir. 2001); **Johnson v. University of Cincinnati,** 215 F.3d 561, 571 (6th Cir. 2000); **Turner v. Ark. Ins. Dept.,** 297 F.3d 751, 754 (8th Cir. 2002); **Allen v. Denver Pub. Sch. Bd.,** 928 F.2d 978, 983 (10th Cir. 1991); **see also, Al- Khazraji,** 784 F.2d at 518 (characterizing § 1981 as a tort remedy, such that non-employer defendants may be liable); **Cf. Goodman v. Lukens Steel Co.,** 482 U.S. 656, 661 (1987)(holding that § 1981 has a much broader focus than contractual rights and approving application of a tort statute of limitations to a § 1981 claim); **Taylor v. Bunge Corp.,** 775 F.2d 617, 618 (5th Cir. 1985)(holding that § 1981 is best characterized as a tort under Louisiana law).

443, 445 n.7 (5th Cir. 1995); **Wicks v. Mississippi State Employment Services,** 41 F.3d 991, 996 n.21 (5th Cir. 1995), as are claims against such individuals under § 1983. **Coleman,** 113 F.3d at 534. Public officials are entitled to qualified immunity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." **Harlow v. Fitzgerald,** 457 U.S. 800, 818 (1982). As noted earlier, the "reasonable person" step is not reached unless the court first finds that the conduct alleged by the plaintiff, if proved, would constitute a violation of his clearly established rights. **Siegert,** 500 U.S. at 233-34.

B.  SECTION 1981 RETALIATION CLAIMS

The Appellants contend that they are entitled to qualified immunity with respect to the retaliation claims asserted by both Dr. Foley and Dr. Hutto.  First, they insist that § 1981 conferred no clearly established right against retaliation.  Second, they contend that the district court erred in denying qualified immunity because it failed to determine what specific unlawful acts of retaliation were committed and whether reasonable public officials in the positions of the Appellants knew or should have known that such acts violated clearly established rights.

The Appellees contend that the right to be free from retaliation for exercising rights protected by § 1981 was clearly established by the Civil Rights Act of 1991.  The district court so

held, and we agree.

In 1982, this Court held that § 1981 afforded a cause of action to an employee who suffered retaliation in response to his filing of an EEOC charge or law suit alleging racial discrimination. **Goff v. Cont'l Oil Co.,** 678 F.2d 593, 597-99 (5th Cir. 1982). The Court explained the elements of that cause of action as (1) that the plaintiff engaged in activities protected by § 1981; (2) that an adverse employment action followed; and (3) that there was a causal connection between the two. **Goff,** 678 F.2d at 599. Later case law applied those principles to retaliation by public officials as well as private employers. **Irby v. Sullivan,** 737 F.2d 1418, 1429-30 (5th Cir. 1984)(recognizing a cause of action for retaliation against El Paso County Sheriff).

In 1989, the Supreme Court decided **Patterson v. McLean Credit Union,** 491 U.S. 164 (1989), a decision which marked a dramatic change in § 1981 jurisprudence. The Supreme Court held that § 1981 covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." **Patterson,** 491 U.S. at 179. The decision eliminated § 1981 claims relating to discriminatory discharge or retaliation. This Court, *Patterson*-bound, so held in **Carter v. South Central Bell,** 912 F.2d 832, 838-41 (5th Cir. 1990).

Dissatisfied with *Patterson*'s interpretation of the 1866 statute (old § 1981), Congress legislatively reversed *Patterson*.

10

**Rivers v. Roadway Express, Inc.,** 511 U.S. 298, 305 (1994); **Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.,** 40 F.3d 698, 713 (5th Cir. 1994). The Civil Rights Act of 1991, enacted November 21, 1991, expanded § 1981 to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship". § 1981(b). Given that the 1991 Act legislatively overruled *Patterson*, this Court was confronted on a previous occasion with the question whether the Act also overruled *Carter*. We found it unnecessary to resolve the issue in the context of that case. **Douglas v. DynMcDermott Petroleum Operations Co.,** 144 F.3d 364, 376 n.14 (5th Cir. 1998). Some of our sister circuits have concluded that amended § 1981 now covers post-hiring retaliation claims arising after November 21, 1991. **Hawkins v. 1115 Legal Serv. Care,** 163 F.3d 684, 693 (2d Cir. 1998); **Andrews v. Lake Shore Rehab. Hosp.,** 140 F.3d 1405, 1411-13 (11th Cir. 1998). Further, this Court has previously affirmed without opinion a district court decision holding a retaliation claim to be actionable under § 1981(b). **Thomas v. Exxon, U.S.A.,** 943 F.Supp. 751, 761-63 (S.D. Tex. 1996), **aff'd** 122 F.3d 1067 (5th Cir. 1997). It seems unreasonable to believe that in enacting the Civil Rights Act of 1991, Congress intended to make the scope of the new § 1981(b) narrower than that of the old § 1981 as it had been interpreted by this Court and many other federal courts before *Patterson.* We hold that an employee's claim

11

that he was subjected to retaliation because he complained of race discrimination is a cognizable claim under § 1981(b).

The district court found that at least since 1994 an objectively reasonable public official should have been aware of an employee's right to be free from retaliation for complaining about race discrimination in employment. We agree with that finding. Nevertheless, the Appellants are protected by qualified immunity unless objectively reasonable officials in their position would have been aware that the specific actions alleged and shown by summary judgment proof violated the statutory rights conferred by § 1981. The district court found that Dr. Foley had overcome the claims to qualified immunity of Appellants Prince and Carlson only.[8] That finding is supported by the record. It is undisputed that Dr. Foley

---

[8]The district court properly applied the same summary judgment criteria to the retaliation claims under § 1981 and Title VII because they are parallel causes of action. Each requires proof of the same elements in order to establish liability. **Raggs v. Miss. Power & Light Co.,** 278 F.3d 463, 468 (5th Cir. 2002); **Shackelford v. Deloitte & Touche, L.L.P.,** 190 F.3d 398, 403-04 n.2 (5th Cir. 1999); **Irby,** 737 F.2d at 1429. Unlike § 1981, however, relief under Title VII is available only against an employer, not an individual supervisor or fellow employee. **See** 42 U.S.C. § 2000e(b)(definition of "employer"); **Grant v. Lone Star Co.,** 21 F.3d 649, 651-53 (5th Cir. 1994)(individual not liable under Title VII unless he meets definition of "employer"). Dr. Foley's employer was the University itself, and Haynes, Smith, and Hines, the President, Provost, and Education Division Chair respectively, were presumably the only officials whose acts or omissions could have conferred Title VII liability for retaliation upon UHV. Thus,the district court's grant of summary judgment with respect to the Title VII retaliation claim is not inconsistent with the denial of summary judgment as to the § 1981 retaliation claims against Prince and Carlson individually.

engaged in conduct protected by § 1981 when he filed a formal charge of race discrimination in December 1994. His non-promotion from associate professor to the rank of full professor in 1997, 1998, and 1999 represented adverse employment actions. With reference to causal connection, the district court found genuine issues of fact with respect to the following allegations by Dr. Foley: that Prince and her allies (including Carlson) were angry about Foley's successful charge of race discrimination; that Prince and Carlson demonstrated continuing hostility toward him and attempted to undermine his standing at UHV; that Carlson was on the Tenure and Promotion Committee in 1997 and 1999 and Prince was on the Committee in 1998, in each instance voting against promotion for Foley; and that "the promotion decision was at all times under the indirect and secret control of Dr. Prince". **Order Regarding Motion for Summary Judgment,** pp. 3,17. An objectively reasonable public official in the years 1997 through 1999 would have known that retaliating against a faculty member for exercising his legal right to file an EEOC charge of discrimination was prohibited by law.[9] If Prince or Carlson performed the acts as to which the district court found genuine fact issues, they are not protected by qualified

---

[9] In *Felton,* we held that a § 1981 claim against a state employee must be asserted through § 1983. **Felton,** 315 F.3d at 482-83. The complaint in this case, although rambling and vague, does assert § 1983 as a basis for recovery (Plaintiffs' Original Complaint, para. 12). Upon remand, the district court could consider granting leave to amend the pleadings to clarify the relationship between §§ 1981 and 1983 in connection with Foley's retaliation claim.

13

immunity.  Although the burden of proving Dr. Foley's claim may be a difficult one to bear, the existence of  genuine, material fact issues entitle him to a trial.

Dr. Hutto's retaliation claim does not fare as well.  The record below fails to establish the second essential element of her claim, i.e., that an adverse employment action occurred.  Under our jurisprudence, an adverse employment action means an ultimate employment decision, such as hiring, granting leave, discharging, promoting, and compensating.  **Dollis v. Rubin,** 77 F.3d 777, 781-82 (5th Cir. 1995).  The employment actions alleged by Hutto do not meet that standard.  Viewing the record in the light most favorable to her, Hutto is complaining of the following employment actions on the part of the Appellants: (1) they schemed to remove her as Chair of the Education Division in August 1996, and to replace her with Cheryl Hines; (2) they tried to undermine an important program within the Division known as the Center for Professional Development and Technology (CPDT), which reflected upon Hutto's leadership; (3) Haynes and Hines reprimanded her for circulating unauthorized flyers regarding the Administration and Education Program (AED) and generally attempted to undermine that program;  and (4) they refused to attend the Phi Kappa Phi initiation ceremony the year that Hutto was the president of the organization. None of these adverse actions qualify as ultimate employment decisions.  Her loss of the title of Chair of the Division in August 1996 did not result in any loss of

14

compensation or benefits and she remained on the faculty as a tenured professor.  Furthermore, that particular claim is clearly barred by the statute of limitations.  The other listed allegations fall far short of ultimate employment decisions.  The district court erred in rejecting the defense of qualified immunity with respect to Dr. Hutto's § 1981 retaliation claim.[10]

C.  SECTION 1983 FIRST AMENDMENT CLAIM

In order to establish a cause of action under § 1983 for an employee's First Amendment claim of retaliation, a plaintiff has the burden of showing: (1) that she suffered an adverse employment action; (2) as a result of speech involving a matter of public concern; (3) that her interest in commenting on the matter of public concern outweighed the defendant's interest in promoting efficiency, and (4) that the adverse action was motivated by the protected speech.  **Harris v. Victoria Indep. Sch. Dist.,** 168 F.3d 216, 220 (5th Cir. 1999).  Speech that is primarily motivated by, or primarily addresses, the employee's own employment status rather than a matter of public concern does not give rise to a cause of action under § 1983.  **Connick v. Myers,** 461 U.S. 138, 147 (1983);

---

[10]The Appellees argue that the Supreme Court has substituted a much broader "tangible employment action" for our "ultimate employment decision" doctrine.  **Burlington Indus. Inc. v. Ellerth,** 524 U.S. 742 (1998); **Faragher v. City of Boca Raton,** 524 U.S. 775 (1998).  However, the test for qualified immunity is whether the Appellees have asserted the deprivation of a statutory right under clearly established law.  As of 1996, the *Dollis* definition of "adverse employment action" as an ultimate employment decision was the clearly established law in this Circuit.

**Teague v. City of Flower Mound,** 179 F.3d 377, 383 (5th Cir. 1999).

In connection with the § 1983 First Amendment claim asserted by Dr. Hutto, the threshold question is whether she can show that she was deprived of a clearly established right. We find that she has not crossed that threshold.

Retaliation by an employer for an employee's speech is actionable under § 1983 only if the speech addressed a matter of public concern. **Connick,** 461 U.S. at 147. Whether it does so depends on the content, context, and form of the statement in issue. **Id.** If speech in a given case is of both public and private concern, i.e., a "mixed speech" case, the court applies these three factors to determine whether the speech is predominantly public or predominantly private. **Teague,** 179 F.3d at 382. If it is predominantly private, that is, if the individual spoke primarily as an employee rather than as a citizen, it is not regarded as addressing a matter of public concern. **Teague,** 179 F.3d at 382 n.4; **Ayoub v. Tex. A&M Univ.,** 927 F.2d 834, 837 (5th Cir. 1991).

Neither in the court below nor in this Court has Dr. Hutto identified the precise speech which she claims to have addressed a matter of public concern and to have triggered retaliation. The district court acknowledged that "the basis for this claim is not entirely clear from Dr. Hutto's complaint." **Order Regarding Motion for Summary Judgment**, page 9. Her attempt to frame the issue in the context of summary judgment was no improvement. Dr. Hutto argued

16

only that she "engaged in protected speech by utilizing internal grievance procedures and filing charges with the Equal Employment Opportunity Commission". **Plaintiffs' Response to Defendants' Motion for Summary Judgment,** page 43. In its order denying summary judgment, the district court found that "racism at UHV is a matter of public concern"; that "Dr. Hutto's free speech claim...is based on her support of Dr. Foley and his claims of racial discrimination..."; and that "the fact that Dr. Hutto made her complaints privately, within the University of Houston system, does not deprive them of their First Amendment character." **Order Regarding Motion for Summary Judgment,** page 10. In her brief in this Court, Dr. Hutto asserts that racism and the existence of a hostile work environment within a university are matters of public concern. **Appellees' Brief,** pages 27-29. Still lacking, however, is the precise identification of the speech as to which First Amendment protection is claimed, which would permit consideration of its content, context, and form as required by the Supreme Court. **Connick,** 461 U.S. at 147. Since Dr. Hutto is claiming that the Appellees retaliated against her for making statements protected by the First Amendment, she is required to be specific as to when her statement or statements were made, to whom they were made, whether they were oral or written, and the content of those statements. If she cannot do so, she cannot overcome the defense of qualified immunity. Based on this record, we must conclude that Dr. Hutto has

17

failed to show the deprivation of a clearly established First Amendment right.[11]

Even if Dr. Hutto were able to cite a specific example of protected speech, she still could not overcome the defense of qualified immunity because, as noted *supra*, she cannot show the occurrence of an adverse employment action. **Harrington v. Harris,** 118 F.3d 359, 365-66 (5th Cir. 1997). The district court erred in rejecting the defense of qualified immunity with respect to Dr. Hutto's § 1983 First Amendment claim.

V. CONCLUSION

The district court's denial of summary judgment as to Dr. Foley's retaliation claim under § 1981 is AFFIRMED. The denial of summary judgment as to Dr. Hutto's claims is REVERSED. The cause is remanded to the district court for further proceedings not inconsistent with this opinion.

---

[11]Dr. Hutto's EEOC charge of discrimination does make reference to race discrimination against Dr. Foley and hostile work environment. It cannot, however, constitute the protected speech of which she complains, because it was submitted on July 19, 1999, only twenty-five days before this suit was filed. There are no allegations of retaliation against her during that twenty-five day period.