United States Court of Appeals
Fifth Circuit

**F I L E D**

July 1, 2004

Charles R. Fulbruge III
Clerk

I n the

# United States Court of Appeals
## for the Fifth Circuit

m 03-60541

LARRY SWANSON,

Plaintiff-Appellant,

VERSUS

CITY OF BRUCE, MISSISSIPPI,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Mississippi
m 3:00-CV-195-D

Before SMITH, WIENER, AND BENAVIDES,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

## I.

Larry Swanson was hired by the City of

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Bruce, Mississippi, in 1990 as a part-time patrol officer while still serving as an elected constable of Calhoun County, Mississippi, a job he has held since 1988. The city is small and has only seven patrol officers. Swanson worked his way up the rank of assistant chief of police, a position he obtained in 1997.

Swanson did not receive any complaints from city officials about his performance until E.J. Bobo, who is black, was hired as police chief in 1997 following a 3-2 vote in his favor

by the city's aldermen. Swanson claims the two aldermen who voted against Bobo were alleged to be racist and that, later, several aldermen tried to undermine Bobo because of his race, making racist comments and bypassing his authority to direct the work of the officers. The city denies these allegations and contends that Bobo's performance as chief was poor.

At a January 3, 2000, meeting, the Board of Aldermen decided to develop new goals and objectives for the police department and to solicit input from academics and other law enforcement experts. On February 1, the board adopted new proposed performance goals, standards, and job descriptions. The city claims these were adopted wholesale from the mayor's recommendation, which was in turn based on outside advice.

The new job descriptions required the assistant chief to be a full-time employee certified as a police officer. Swanson could not work full-time and fulfill his elective duties as constable. Also, he was not certified as a police officer, though he had received some similar training as a constable.

On May 6, the aldermen voted to discharge Swanson and Bobo. The letter of termination indicated that "lack of department unity" was the reason for Swanson's discharge. Swanson was replaced by a certified police officer, who was apparently otherwise uninvolved in the dispute among Swanson, Bobo, and the board.

Swanson alleges that his firing was in retaliation for his support of Bobo, as embodied in public statements before the Board of Aldermen and in conversations with its members. After filing charges of discrimination with the Equal Employment Opportunity Commission,

Bobo and Swanson filed separate complaints in federal district court. Swanson asserted claims pursuant to 42 U.S.C. §§ 1981 and 1983 and title VII.

The district court granted summary judgment to the city with respect to Swanson's claims and partial summary judgment with respect to Bobo's. The court found that Swanson had failed to address his First Amendment freedom of association claim and that it failed as a matter of law. The court further found, with respect to his retaliatory and discriminatory firing claims, that Swanson had presented no evidence that he was qualified for the assistant chief position or that the change in qualifications was motivated by animus against him.

Swanson appealed, but his appeal was dismissed for lack of jurisdiction because there was no final order. Bobo settled with the city, and the district court entered a final order dismissing the suit with prejudice.

On review, we approach the district court's grant of summary judgment *de novo*, applying the same standards as required of the district court. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The city is entitled to summary judgment if there is no genuine issue of material fact and the city is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The panel, on review, must draw all reasonable inferences from the fact in favor of the nonmoving party. *Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 236 (5th Cir. 2003).

II.

Swanson claims that when the city terminated him, it violated his First Amendment right to freedom of association. Particularly, he alleges that his firing, coupled

with Bobo's, severed a protected relationship between them. This claim is meritless.

The Supreme Court has recognized two broad varieties of freedom of association protected by the Constitution. The first includes the right to enter into intimate relationships, including the union of marriage, and to maintain other close familial relationships. *City of Dallas v. Stanglin*, 490 U.S. 19, 23-24 (1989); *Zablocki v. Redhail*, 434 U.S. 374, 383-86 (1978).

Such intimate relationships must at least involve "deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs, but also distinctively person aspects of one's life." *Roberts v. United States Jaycees*, 468 U.S. 609, 620 (1984). These relationships "are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." *Id*. The second variety includes the right of individuals to associate with others for the purpose of engaging in activities otherwise protected by the Constitution, especially including the First Amendment's guarantees of free speech, assembly, and religion. *Id*. at 622.

Though Bobo and Swanson were momentarily bound by common speech goals, their relevant relationship is essentially social and professional in nature. The tight fellowship among police officers, precious though it may be, does not include such "deep attachments and commitments of thoughts, experiences, and beliefs" or personal aspects of officers' lives sufficient to constitute an intimate relationship. *Id*. at 620. Neither did

Swanson and Bobo's employment relationship arise for the purpose of engaging in protected speech. Accordingly, the law of the Supreme Court and this circuit do not recognize the relationship between Swanson and Bobo as one protected under the freedom of association clause.

Swanson also alleges that he was subject to a racially discriminatory firing, as defined by 42 U.S.C. § 2000e-2(a)(1), an element of title VII. The subsection provides that "it shall be an unlawful employment practice for an employee . . . to discharge any individual . . . *because of such individual's* race . . . ." *Id*. (emphasis added). That is, the person who is discharged must be discharged on account of his race, not on account of any third party's race. Here, Swanson is white, and no one suggests that he was fired for that reason.[1] Rather, at most, Swanson was terminated as an indirect result of Bobo's race. So, Swanson finds no relief under the plain language of § 2000e-2(a).

Swanson's § 1981 claim has more merit, however. The section allows a terminated employee to recover where his firing was in retaliation for his speech acts in support of the rights of minorities. *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1229 n.15 (5th Cir.

---

[1] The closest this court has come to Swanson's logic is in *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 589 (5th Cir. 1998), *reinstated in relevant part on reh'g en banc*, *Williams v. Wal-Mart Stores, Inc.*, 182 F.3d 333 (5th Cir. 1999) (per curiam) (en banc), in which we allowed a white plaintiff to press a claim under 42 U.S.C. § 2000e-2(a) when discharged on account of her interracial marriage. There, however, although the person who was terminated was white, *her* race nonetheless was the cause of the discriminatory treatment, if only because her race differed from that of her husband.

1980)[2]; *see Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 339 (5th Cir. 2003). Swanson alleges that he was fired because he supported Bobo, a black man, against racist attempts to undermine him.

As a protected person under § 1981, Swanson may press a claim for retaliatory firing and have that claim considered under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green,*. 411 U.S. 792, 802-03 (1973). To prevail through circumstantial evidence, Swanson must first make a *prima facie* case by showing that he is a protected person, that he is qualified for the position, that he was subjected to an adverse employment action, and that he was replaced by someone outside the protected class. *See id.* at 802; *Shackelford v. Deloitte & Touche*, 190 F.3d 398, 404 (5th Cir. 1999).

Swanson is a protected person, again by virtue of his speech, and he suffered an adverse action through his termination. And he was replaced by someone outside his protected class—in this case, by a person who had no history of agitating in favor of Bobo or against the board of aldermen. As for his qualification for the assistant chief position, even if he did not fulfill the new formal requirements passed by the city, Swanson's prior service is evidence that he was at least minimally qualified to continue in his duties.[3] Indeed, in his capacity as an elected constable, he had been required to receive the same academic and firing range training as typically required of police officers. Accordingly, Swanson has stated a *prima facie* case for a retaliatory firing.

In satisfaction of the second step of the *McDonnell Douglas* framework, the city offers a legitimate non-discriminatory explanation for Swanson's termination: The new standards under which Swanson was terminated were calculated to improve the police department. *See McDonnell Douglas*, 411 U.S. at 802.

The third step of *McDonnell Douglas* allows Swanson to attempt to show, by a preponderance of evidence, that the city's proffered explanation was mere pretext for retaliation. *Id.* at 804. He presents evidence that (1) aldermen stopped speaking to him after he had defended Bobo; (2) they undermined his authority by discussing police business with his subordinates instead of with him; (3) the adoption of the new job requirements was made soon after he agitated for Bobo; (4) he was not given a full opportunity to meet the city's new requirements; (5) he was fired the same day as Bobo, and (6) he was not given the opportunity to accept a demotion to patrolman. This is sufficient to

[2] The court in *Pinkard* explained that "[a] claim under § 1981 may be based upon retaliatory action taken against an employee for the employee's lawful advocacy of the rights of racial minorities . . . ." *See also Winston v. Lear Siegler*, 558 F.2d 1266 (6th Cir. 1977) (stating that white person fired for protesting an asserted racially motivated firing of a non- white may sue under § 1981); *Caldwell v. Nat'l Brewing Co.*, 443 F.2d 1044 (5th Cir. 1971) (stating that plaintiff alleging that he was discharged because he complained about racially discriminatory employment practices may intentionally bypass EEOC and seek relief under § 1981).

[3] It would be circular reasoning to assert that Swanson was unqualified merely because he did not satisfy the city's newly-enacted standards. After all, it is Swanson's very claim that the standards were promulgated as a pretext for discrimination. Whether the standards were a veil for discriminatory intent is more properly a question for the *third* step of the *McDonnell Douglas* burden-shifting regime, not the first.

create a genuine issue of material fact as to whether Swanson suffered a retaliatory termination, so that matter should go to a jury.

The summary judgment on the § 1981 claim is REVERSED. The judgment is otherwise AFFIRMED. This matter is REMANDED for further appropriate proceedings.