# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 14, 2008

Charles R. Fulbruge III
Clerk

No. 07-30525
Summary Calendar

MICHAEL R MITCHELL

Plaintiff-Appellant

V.

CRESCENT RIVER PORT PILOTS ASSOCIATION; ALLEN J GIBBS, in his individual and personal capacity; BOARD OF RIVER PORT PILOTS COMMISSIONERS FOR THE PORT OF NEW ORLEANS; JACK H ANDERSON, in his individual and personal capacity; DONALD J SHORT, in his individual and personal capacity; SCOTT A LOGA, in his individual and personal capacity; CRAIG ANDREWS, in his individual and personal capacity; JAMES E CRAMOND, in his individual and personal capacity for current and former members of the Board of River Pilots Commissioners

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:06-CV-3746

Before JOLLY, PRADO, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Plaintiff-Appellant Michael Mitchell ("Mitchell") appeals the order of the district court dismissing all of his claims against Defendants-Appellees Crescent River Port Pilots Association, Board of River Port Pilots Commissioners for the Port of New Orleans, and various members of these two groups (collectively, "Defendants"). Mitchell asserts that the Defendants discriminated against him on the basis of his race in a manner that precluded him from becoming a river port pilot. The district court, in a detailed thirty-six page order, granted the Defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Although the district court's opinion sets out the facts in copious detail, here we merely summarize the facts most relevant to this appeal. Mitchell, who is African-American, wanted to earn his commission as a river port pilot under Louisiana law. He has been a first class pilot of passenger vessels since 1996, and becoming a river port pilot would have allowed him to pilot vessels in various parts of the Mississippi River near New Orleans. To become a river port pilot, an applicant first must satisfy several conditions, including the completion of "an approved apprenticeship program within the geographic area." LA. REV. STAT. ANN. § 34:993. The Crescent River Port Pilots Association (the "Association"), which consists of the current river port pilots, runs the approved apprenticeship program in the New Orleans area, and it admits applicants to its program through an election. To be eligible for the election to the apprenticeship program, an applicant must possess the U.S. Coast Guard pilot's licenses for the designated portions of the Mississippi River and must not have reached his fortieth birthday prior to the Association's election day.

Mitchell alleges that he began his attempts to become a river port pilot in November 2001. At that time, Allen J. Gibbs ("Gibbs"), the president of the Association, told Mitchell to apply for its apprenticeship program. However,

Jack H. Anderson, the president of the Board of River Port Pilots Commissioners for the Port of New Orleans (the "Board"),[1] informed Mitchell that he did not meet the requirements to stand as a candidate for a river port pilot apprenticeship because he did not hold the U.S. Coast Guard pilot's licenses for all of the required portions of the Mississippi River. Mitchell then began his attempt to obtain his remaining required pilot's licenses. One of the requirements for receiving a pilot's license is the completion of a certain number of rides aboard piloted ships. Therefore, Mitchell asked Gibbs for permission to ride with current river port pilots on their vessels. Gibbs responded that the Association was not allowing riders at that time, but that Mitchell should try again in early 2002. Mitchell then found three river port pilots who offered to have Mitchell ride with them. When Mitchell asked Gibbs again in 2002 to ride along with these river port pilots, Gibbs responded that the Association was not allowing riders for insurance reasons.

Mitchell continued in his attempts to go on piloted ships with current river port pilots, including drafting his own indemnity agreement for the Association to have the current river port pilots sign before permitting Mitchell to ride with them after the Association failed to follow up on its promise to draft one. Gibbs responded that Mitchell's form was unsatisfactory, but he did not provide his own form at that time. Mitchell also sought to ride with Errol Williams ("Williams"), an African-American deputy pilot (i.e., a first-year river port pilot), but Williams would not allow Mitchell to ride in his vessel because he said that the Board and Association would not allow a deputy pilot to take along prospective apprentices. Mitchell alleges, however, that the Board permitted

---

[1] The Board is a statutorily created body that consists of three river port pilots whom the Governor selects as Commissioners, with the state senate's consent. See LA. REV. STAT. ANN. § 34:991(A). The Governor designates which Commissioner serves as its president. Id. The Board is responsible for establishing the qualifications of river port pilots and providing for the examination and approval of apprenticeship programs, among other duties. See id. § 34:991(B).

white deputy pilots to have prospective apprentices ride with them and that the Board did not promulgate a provision banning this practice until after Mitchell asked to ride with Williams.[2]

Gibbs finally provided Mitchell with an approved indemnity agreement in May 2003, even though the Association had apparently finished drafting it in January 2003. In June 2003, the Association held an election for river port pilot apprentices. Mitchell was not on the ballot, and he contends that the Association elected six whites and no African-Americans to the apprenticeship program. After the election, Mitchell sent the Board several letters requesting placement in the next apprenticeship program, but he contends that the Board ignored his letters.

Mitchell asserts that in May 2005 he finally obtained his U.S. Coast Guard pilot's licenses for all portions of the Mississippi River in question. He informed the Board that he had met its licensing requirement. The Association held its next election on April 3, 2006, and Mitchell's name again was left off of the ballot. Mitchell asserts that the Association elected five whites and no African-Americans in this election. The Board—which determines the eligibility of prospective apprentice candidates—first told Mitchell that he was not on the ballot because it had lost his application, but it then stated that he was ineligible because he had turned forty years of age in November 2004, making him older than the age limit for new river port pilots. It also informed him that he had not in fact obtained the necessary licenses for all of the geographic areas because he was not licensed for certain waterways. Mitchell argues that the Board should have waived the license requirement for those waterways pursuant to its statutory discretion because ship traffic on them was "severely restricted" after Hurricane Katrina.

---

[2] The Board did permit Mitchell to ride with Williams after Williams completed his year as a deputy pilot.

After the April 2006 election, Mitchell filed another application to become a river port pilot apprentice, and on July 14, 2006, he filed this suit. His complaint alleges that the acts of the Defendants, individually and in concert, prevented him from meeting the requirements of becoming a river port pilot on the basis of his race, in violation of 42 U.S.C. §§ 1981, 1983, 1985, and 1986, the Equal Protection and Due Process Clauses of the Fourteenth Amendments, and the Louisiana Constitution. The Defendants filed several motions to dismiss, which the district court granted in their entirety. Mitchell appeals. We have jurisdiction over the district court's final judgment pursuant to 28 U.S.C. § 1291.

## II. STANDARD OF REVIEW

We review the district court's grant of a Rule 12(b)(6) motion to dismiss de novo, construing the plaintiff's complaints in the light most favorable to him and accepting all well-pleaded facts as true. Ferrer v. Chevron Corp., 484 F.3d 776, 780 (5th Cir. 2007). Although we view a dismissal pursuant to Rule 12(b)(6) with "disfavor," Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 (5th Cir. 2005), we will affirm a district court's decision if the plaintiff has failed to allege "enough facts to state a claim to relief that is plausible on its face" or failed to "raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965, 1974 (2007).

## III. DISCUSSION

A. The Statute of Limitations Bars Mitchell's Pre-July 14, 2005, Claims

The district court dismissed many of Mitchell's claims because the facts upon which they are based occurred before the relevant statute of limitations expired. On appeal, the Defendants agree with the district court that a one-year statute of limitations applies, while Mitchell argues that this court should impose a four-year statute of limitations.

Mitchell claims violations under 42 U.S.C. §§ 1981, 1983, 1985, and 1986. Sections 1981, 1983, and 1985 do not include a statute of limitations.[3] For these claims, a federal court generally must apply the state law statute of limitations that would govern an analogous state law cause of action. See Goodman v. Lukens Steel Co., 482 U.S. 656, 660 (1987); Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 462 (1975) ("Since there is no specifically stated or otherwise relevant federal statute of limitations for a cause of action under § 1981, the controlling period would ordinarily be the most appropriate one provided by state law."). Under this rule, the court here would apply Louisiana's one-year prescriptive period for torts. See LA. CIV. CODE ANN. art. 3492; Johnson v. Crown Enters., Inc., 398 F.3d 339, 341 (5th Cir. 2005) (noting that courts traditionally apply a state's personal injury limitations period in a § 1981 claim); Clifford v. Gibbs, 298 F.3d 328, 332 (5th Cir. 2002) (applying Louisiana's one-year statute of limitations for personal injury actions to a § 1983 claim); Helton v. Clements, 832 F.2d 332, 334 (5th Cir. 1987) (noting that a state law limitations period applies to a § 1985 claim). However, in 1990 Congress passed a "catchall" four-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990, the date of the enactment of that law. See 28 U.S.C. § 1658(a). Therefore, if Mitchell's causes of action arise under a federal statute enacted after December 1, 1990, we must apply a four-year statute of limitations. Mitchell argues that his § 1981 causes of action should have a four-year statute of limitations pursuant to this standard.

In Jones v. R.R. Donnelley & Sons, Co., the Supreme Court held that "a cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990—and therefore is governed by § 1658's 4-year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post-1990

---

[3] Section 1986 specifically includes a one-year statute of limitations for causes brought under that provision. 42 U.S.C. § 1986.

enactment." 541 U.S. 369, 382 (2004). Thus, we must determine whether a post-1990 enactment created a "new right" that enables Mitchell to bring his causes of action. Id. In Jones, the plaintiff alleged wrongful termination, refusal to transfer, and hostile work environment related to his then-current employment, which all arose under the 1991 revision to the Civil Rights Act and therefore required the imposition of the federal four-year statute of limitations. In stark contrast, Mitchell's causes of action involve pre-employment claims. That is, in essence he is alleging discrimination in the formation of a contract, not in the "benefits, privileges, terms, and conditions of the contractual relationship," which is the language Congress added in the Civil Rights Act of 1991. See 42 U.S.C. § 1981(b).

The Supreme Court's 1989 decision in Patterson v. McLean Credit Union, 491 U.S. 164 (1989), makes clear that Mitchell would have a claim under § 1981 even without the added language. In Patterson, the Court held that the then-current language of § 1981 provided two rights: protection against the refusal to enter into a contract with someone on the basis of race and protection against racial discrimination that infects the legal process in ways that prevent one from enforcing contractual rights. Id. at 176-77. The Court specifically held that § 1981 does not reach post-formation conduct, a holding that prompted Congress to amend the statute, but the Court explicitly recognized a cause of action for pre-formation conduct. Id. at 177; see also Jones, 541 U.S. at 383. Thus, because Mitchell never entered into a contract with the Defendants, his allegations that they discriminated against him in preventing him from qualifying as a candidate for an apprenticeship would have been actionable before the enactment of the 1990 federal "catchall" statute of limitations. It follows that we must borrow the analogous state tort statute of limitations, which is Louisiana's one-year prescriptive period.

Mitchell argues that his claims are possible only because of the addition of § 1981(c) in the 1991 amendment to the Civil Rights Act, thereby making the federal four-year statute of limitations apply. Section 1981(c) provides that "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." Mitchell argues that the Defendants acted "under color of State law" because the state, through the Board, promulgated the requirements for becoming a river port pilot, and that before the addition of this provision he would not have been able to sue the Defendants for "acting under color of State law." However, the legislative history of the Civil Rights Act of 1991 makes clear that this provision did not make new law but instead codified previous Supreme Court precedent. H.R. REP. NO. 102-40(I), at 92 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 630 (stating that § 1981(c) "confirms section 1981's coverage of both public and private sector employment"); H.R. REP. NO. 102-40(II), at 37 (1991), reprinted in 1991 U.S.C.C.A.N. 694, 731 (stating that subsection (c) "is intended to codify Runyon v. McCrary[, 427 U.S. 160 (1976)]"); see Oden v. Oktibbeha County, 246 F.3d 458, 463 (5th Cir. 2001) (noting that Congress's goal in enacting § 1981(c) was to codify Runyon); see also Pittman v. Or., Employment Dep't, No. 05-35900, 2007 WL 4246114, at *2 (9th Cir. Dec. 5, 2007) (recounting the legislative history of § 1981(c)); Aleman v. Chugach Support Servs., Inc., 485 F.3d 206, 211 (4th Cir. 2007) (noting that § 1981(c) merely codifies the previous understanding that § 1981 prohibits all discrimination whether or not under color of law). In Runyon, the Court held that § 1981 prohibits both private parties and state entities from discriminating in the formation of contracts. See Runyon, 427 U.S. at 168-71. Thus, the 1991 enactment of § 1981(c) merely codified the preexisting case law, meaning that Mitchell still would have had a cause of action against the Defendants under the old version of § 1981.

Mitchell further argues that one of his causes of action under § 1981 is a claim for retaliation, which he alleges this court concluded became possible only after the amendments in the Civil Rights Act of 1991. See Foley v. Univ. of Houston Sys., 355 F.3d 333, 339 (5th Cir. 2003). However, Mitchell fails to recognize that a retaliation claim typically involves a plaintiff who is a current or former employee, that is, one who already has entered into a contract, and the 1991 amendments made clear that § 1981 reaches post-formation conduct. See id. Here, there was no formation of a contract whatsoever. That is, Foley does not help Mitchell because it dealt with whether § 1981 could reach post-formation retaliation, not whether § 1981 reaches a retaliation claim in general, and Mitchell has provided no other authority to suggest that the 1991 amendments created a new cause of action for pre-formation retaliation. See id.

Finally, Mitchell asserts that his claims are not time-barred because they fall under the "continuing violation" theory of discrimination. He contends that all of the Defendants' actions dating back to 2001 comport with the notion that "where the last alleged act is part of an ongoing pattern of discrimination and occurs within the filing period, allegations concerning earlier acts are not time-barred." McGregor v. La. State Univ. Bd. of Supervisors, 3 F.3d 850, 866 (5th Cir. 1993) (internal quotation marks omitted). The district court properly rejected this argument. In National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002), the Supreme Court held that allegations based on "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. . . . Each discrete discriminatory act starts a new clock for filing charges alleging that act." The Court then described various "discrete acts," which include "termination, failure to promote, denial of transfer, or refusal to hire." Id. at 114. The Court concluded that, unlike a hostile work environment claim—which by nature involves repeated conduct—each distinct alleged unlawful employment practice must fall within

the statute of limitations. Id. at 114, 115. Although Mitchell is correct that Morgan involved Title VII and not § 1981, we have previously applied Morgan to reject the "continuing violation" theory in a § 1981 case. See Pegram v. Honeywell, Inc., 361 F.3d 272, 280 (5th Cir. 2004). Therefore, because Mitchell asserts discrimination based on various discrete acts, only those acts that fall within the relevant statute of limitations period are actionable. In short, Mitchell points to no authority applying the continuing violation theory to a similar claim, and given Supreme Court guidance and our previous case law, we reject his invitation to do so here.

As Mitchell does not allege any other bases for construing his causes of action to be possible only because of a post-1990 law, we are bound to apply the analogous state tort statute of limitations. Mitchell filed his complaint on July 14, 2006. Therefore, Louisiana's one-year prescriptive period bars his claims for any acts that the Defendants took prior to July 14, 2005.[4] The district court properly granted the Defendants' motions to dismiss for all of these allegations.

B.     Mitchell's Ineligibility to be a River Port Pilot Precludes his Post-July 14, 2005, Allegations

Mitchell argues that the Defendants' conduct, including the 2006 election for apprenticeships, exhibited racial discrimination in their failure to consider him for a river port pilot position. When a plaintiff alleges facts that he claims creates an inference of discrimination under §§ 1981 or 1983 but does not allege direct discrimination, we invoke the familiar McDonnell Douglas framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under McDonnell Douglas, a plaintiff establishes a prima facie case of discrimination if he demonstrates that (1) he is a member of a protected class, (2) he was

---

[4] Mitchell knew or had reason to know of the Defendants' allegedly discriminatory acts when they occurred, especially given that he complained to the Board and the Association on numerous occasions, meaning that the statute of limitations began to run at that time. See Jones v. Alcoa, Inc., 339 F.3d 359, 364-65 (5th Cir. 2003).

qualified and applied for the job, (3) the employer rejected him for the job despite his qualifications, and (4) the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications. Id. If the plaintiff fails to demonstrate that he is qualified for the position he sought, then he has failed to make out a prima facie case of discrimination and the inquiry ends. See Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 318 (5th Cir. 2004).

The Supreme Court has ruled that at the Rule 12(b)(6) stage, a plaintiff need not plead all of the elements of a prima facie case of discrimination under McDonnell Douglas in his complaint but instead must simply present a "short and plain statement of the claim showing that [the plaintiff] is entitled to relief." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002) (quoting FED. R. CIV. P. 8). Therefore, a dismissal for failure to state a claim under Rule 12(b)(6) cannot be based on a failure to plead the McDonnell Douglas elements. However, we may consider McDonnell Douglas when a plaintiff asserts circumstantial evidence of discrimination and then affirmatively defeats his own claim by admitting that he cannot later meet his burden. Cf. Jordan v. Alternative Res. Corp., 458 F.3d 332, 346 (4th Cir. 2006) (noting that the Court's holding in Swierkiewicz "left untouched the burden of a plaintiff to allege facts sufficient to state all the elements of her claim." (internal quotation marks and citation omitted)).

Here, Mitchell expressly negated one of the factors that he eventually would have to demonstrate to obtain relief by admitting that he was ineligible for the position he sought because of his age. Mitchell acknowledged in his complaint that he turned forty years old in November 2004. The Louisiana administrative code states that an applicant "must not have reached his fortieth birthday prior to the day when the Crescent River Port Pilots Association votes on accepting new apprentices." LA. ADMIN. CODE. tit. 46 § 3201. Because

Mitchell was past his fortieth birthday for all of the alleged acts that occurred after July 14, 2005, his complaint fails to state a claim that he was the subject of discrimination based on his race because it expressly negates one of the McDonnell Douglas factors.[5] His ineligibility for the position also means that he cannot make out a claim for conspiracy to interfere with his civil rights under §§ 1985 or 1986 because he has failed to demonstrate an underlying violation of his civil rights. See Earnest v. Lowentritt, 690 F.2d 1198, 1202 (5th Cir. 1982) (noting that a violation of § 1985 requires an act in furtherance of a conspiracy that is independently illegal); see also Bryan v. City of Madison, Miss., 213 F.3d 267, 276 (5th Cir. 2000) (noting that a valid § 1985 claim is a prerequisite to a § 1986 claim). The district court therefore properly granted the Defendants' motions to dismiss for all of Mitchell's claims that were within the statute of limitations.[6]

## IV. CONCLUSION

At the end of its lengthy and well-reasoned opinion, the district court expressed its concerns regarding the "seriousness" of Mitchell's claims given the Defendants' "allegedly deficient record of including African-Americans in their number." We agree with the district court's sentiment, especially given that Mitchell attempted to comply with the Defendants' requirements for entering the apprenticeship program and was diligent in his efforts. However, as the district court concluded, the law is clear that the statute of limitations for the pre-July 14, 2005, claims and Mitchell's ineligibility for the position of a river

---

[5] The Defendants also assert that Mitchell was not qualified because he had not obtained his necessary U.S. Coast Guard licenses, while Mitchell argues that the Board should have waived this requirement because those waterways had very little traffic. However, Mitchell still would have been age-barred under the state's regulations even if the Board had waived this requirement.

[6] The district court also did not abuse its discretion in failing to exercise supplemental jurisdiction over Mitchell's state law claims given that it dismissed all of his federal claims. See Priester v. Lowndes County, 354 F.3d 414, 425 (5th Cir. 2004).

port pilot for the remainder of his claims preclude him from obtaining relief. Therefore, we AFFIRM the district court's order granting the Defendants' Rule 12(b)(6) motions to dismiss.[7]

AFFIRMED.

---

[7] Because we affirm the district court's dismissal of Mitchell's claims based on the statute of limitations and his ineligibility for the position, we will not address the Defendants' arguments that they are not state actors for the purposes of Mitchell's § 1983 claims.